**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL D'ALESSANDRO,<br><br>                    Plaintiff,<br><br>vs.<br><br>THE CITY OF NEWARK,<br><br>                    Defendant. | Civil Action No.: 08-1886 (PGS)<br><br><br>**OPINION** |

**SHERIDAN, U.S.D.J.**

Michael D'Alessandro ("Plaintiff") was discharged by the City of Newark ("Defendant" or City) in September 2006.   Plaintiff filed a complaint against Defendant alleging age and gender discrimination in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1, et seq; gender discrimination in violation of Title VII of the Civil Rights Act (Title VII); and age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.  Currently before the Court is Defendant's motion for summary judgment, seeking dismissal of Plaintiff's complaint in its entirety.[1]   For the reasons set forth below, Defendant's motion is granted.

---

[1] This case is odd because Plaintiff was fired at the outset of Mayor Corey Booker's administration.  One would think, due to the timing, that the complaint would allege that Plaintiff was fired due to his politics, contrary to the First Amendment; but such a theory does not appear anywhere in the complaint.  Obviously, since one cannot sustain a firing contrary to the First Amendment, age and sex discrimination are employed.

I.     **BACKGROUND**[2]

The City's Law Department provides legal services for the City's administration.  The Law Department is organized into multiple sections, which are overseen by the Corporation Counsel.  Many lawyers hired to work for the Law Department "serve at the pleasure of the Corporation Counsel," pursuant to City Ordinance 2.6-5.1.  The City has also adopted Ordinance 2:2-84.4, which provides that the City is an equal opportunity/affirmative action employer that does not discriminate against employees or applicants for employment on the basis of age or gender.

Plaintiff Michael D'Alessandro is a New Jersey attorney.  In June 2001, Plaintiff was hired by Defendant to work in the Law Department as an Assistant Corporation Counsel.  At that time, he was forty-two years old.  Plaintiff maintains that Defendant discriminates against employees on the basis of age and gender.

A.     **Plaintiff's Performance as Assistant Corporation Counsel**

Plaintiff was initially assigned to work in the Civil Litigation Section.  At that time, two females and four male attorneys were also serving in that section.  Plaintiff was supervised by First Assistant Corporation Counsel John Pidgeon, a male of approximately sixty years of age.  During Plaintiff's tenure with the Civil Litigation Section, Assistant Corporation Counsel Pidgeon authored four memoranda regarding Plaintiff's performance.

First, a memorandum dated January 30, 2002, included the following reprimand: "At th[e] meeting the explanation you provided with respect to your proposed strategy in the defense of this

---

[2]The relevant facts are taken from the parties' statement of undisputed material facts.  The Court has concluded that the facts submitted by Plaintiff relating to the grievance of his termination are not relevant to the disposition of this motion.  Plaintiff has failed to explain or demonstrate how his grievance history is relevant to his claims of age and gender discrimination.

matter raised serious questions in my mind concerning your ability to successfully fulfill your obligations in this office."  Second, in a memorandum dated April 1, 2002, Plaintiff was criticized for his failure to prepare a memorandum under "the Five Day Rule," and for his "inability to discuss the *Sun Corp* opinion and other relevant decisions applicable to the Andrews matter."  On April 4, 2002, Assistant Corporation Counsel Pidegeon wrote the third memorandum, in which he reprimanded Plaintiff for failing to indicate at a Litigation Section meeting that he was assigned a particular case, even though Plaintiff had filed an answer in the matter.  In the final memorandum dated May 22, 2002, Assistant Corporation Counsel Pidgeon requested that the Corporation Counsel re-assign Plaintiff to another section.

> This will confirm our numerous conversations and written correspondence concerning my dissatisfaction with your performance as a member of the Litigation Section.
>
> Simply put you are not satisfactorily fulfilling your duties as a member of the section and have not demonstrated the required interest or motivation in developing skills in the area of litigation to justify your continued assignment to that section.
>
> In addition to numerous other instances at our last litigation meeting you acknowledged that you had failed to file a Motion or take other action as directed in an assignment memo for over three (3) months and that the only action you had taken was to prepare a Motion you had not filed and obtain consent to vacate a Default.
>
> This and the other numerous deficiencies I have noted in your performance have led me to conclude that it is necessary to terminate your assignment to the Litigation Section.
>
> I am by a copy of this memorandum requesting that the Corporation Counsel re-assign you to another section or take whatever action she deems appropriate which includes removing you from the Litigation Section.

Plaintiff was transferred to the Municipal Prosecutor's office.

**B.     Plaintiff's Performance in the Municipal Prosecutor's Office**

Chief Prosecutor Albert Mrozik, a male, served as Plaintiff's supervisor in the Municipal Prosecutor's office.  On December 20, 2002, Chief Prosecutor Mrozik wrote to Plaintiff reprimanding Plaintiff for failing to page him when calling out sick.  Plaintiff admits that he failed to page his supervisor, but stated that he called the Corporation Counsel's office to advise of his absence.  On December 27, 2002, Plaintiff wrote a memorandum to Corporation Counsel Joanne Watson apologizing for his failure to page Chief Prosecutor Mrozik.

On August 21, 2003, Corporation Counsel Watson held a corrective conference with Plaintiff.  Thereafter, in an August 25, 2003 memorandum, she directed that (1) Plaintiff is "to comply with all directives given by [his] immediate supervisor" and (2) "[b]ecause of excessive sick leave, any further sick time used must be accompanied by doctor's note."  She also stated, "I find your conduct unbecoming of a City employee and a written reprimand is warranted.  Please be advised that any further problems with adhering to directives given by your Supervisor will result in additional disciplinary action."

On October 21, 2004, Chief Prosecutor Mrozik wrote a memorandum to Plaintiff regarding his failure to check his e-mail.  The memorandum states as follows:

> I am attaching a copy of an e-mail that was forwarded to you on October 14, 2004, concerning a case of importance, which was one, the calendar for the Monday's meeting.
>
> I have had OMB check the e-mail system, and the e-mail was delivered to you and you have not opened it.  You know what the Corporation Counsel discussed at our Tuesday meeting.  Since the ABC was aware I sent you the e-mail, I can now understand their disappointment that you did not personally appear at [the] meeting.
>
> This is not the first time I have discussed your failure to read your e-mail correspondence.  Attorneys are under a duty to respond

> to all correspondence on cases.  Your failure to do so is a poor
> reflection on this office and me.

Plaintiff admitted that "there were times that I was not able to read every e-mail."

Plaintiff also admitted that on more than one occasion he failed to punch-out as required.

Corporation Counsel instituted a policy of punching-in and punching-out to keep track of employees

and to account for their time.  Plaintiff acknowledged that Corporation Counsel would be unable to

keep track of his time if he did not punch-out.

On November 20, 2004, Chief Prosecutor Mrozik admonished Plaintiff for practicing law

outside of his employment with the City.

> Your W-9 form with your private law firm's TIN number was
> sitting in the out bin of the fax machine when I came in today.  The
> date time stamp on the paper indicates that your TIN was sent during
> work hours, 3:10 p.m. on a work day, Friday, November 19, 2004.
> The Corporation Counsel forbids outside practice for full time
> Assistants in the Law Department.  I am without words.  But, my
> further question is why you sent this information to the New Jersey
> Transit Claim Department.  You represent NJ Transit employees in
> Part 7 on fare evasion cases.  I will leave that issue for your
> discussion with Ms. Watson.  You should contact her on Monday.

Following that memorandum, on December 7, 2004, Corporation Counsel Watson issued Plaintiff

a written reprimand.

> It is apparent that you are engaged in a private practice, which
> is in direct violation of Corporation Counsel's policy, which states
> that: "no full-time attorney shall engage in or maintain a private
> practice."  Your failure to adhere is disturbing and has a negative
> impact on the overall efficiency of the Prosecutor's Office.
>
> Let this serve as a warning and severe reprimand that this type
> of behavior will not be tolerated.  Further infractions of this type will
> result in disciplinary action and/or termination.  Please govern
> yourself accordingly.

Plaintiff conceded that he represented an individual as a private attorney while employed by the City.

5

In a March 7, 2005 memorandum, Plaintiff was advised by Chief Prosecutor Mrozik that he left discovery in the courtroom.

> I am attaching a copy [of] discovery that was left in the Part II today.

> You have been here for over two years now. You know that the prosecutors here are responsible for maintaining and creating files on contested cases, and I am surprised you would simply leave discovery on the desk in the courtroom.

### C.   Plaintiff's Termination

In July 2006, Corey Booker became the Mayor of Newark. As a result, Aney Chandy was appointed to serve as Corporation Counsel and Marvin Adames was appointed Chief Prosecutor. Therafter, First Assistant Corporation Counsel Marquis D. Jones and Chief Prosecutor Adames co-authored a memorandum, which is undated, regarding Plaintiff.

> I am completing this memorandum to Michael D'Alessandro's personnel file to memorialize the instances and reasons why he has had to be counseled regarding serious performance deficiencies that called into question his fitness to be a Municipal Prosecutor for the City of Newark.

> Specifically, Mr. D'Alessandro had been counseled on numerous occasions since July 26, 2006 about his lack of responsiveness in processing discovery. In fact, on many occasions Mr. D'Alessandro purposefully left discovery in the courtroom rather than following the mandated rules for processing discovery. As a result, on many occasions the discovery would not be located, and Judges dismissed cases for lack of prosecution based on violations of the New Jersey Court Rules governing discovery in criminal matters.

> Despite being warned about the proper procedure for Court appearances, he failed to remain in court for the entire session thereby causing cases to proceed without a prosecutor and causing the public defender to make improper offers so the Court could continue in session.

> He failed to return to the office after Court on many occasion

intentionally disobeying direct orders of the First Assistant
Corporation Counsel and the Chief Municipal Prosecutor.

He failed to work the requisite number of hours required by
the policy of the Law Department and the Union Contract.

In September 2006, Corporate Counsel Chandy and Chief Prosecutor Adames informed Plaintiff that he was terminated effective September 15, 2006. Plaintiff contends that he was told that he was being fired because of a "change of direction" and admits that there was no mention of his age or gender during this conversation. A few days prior to Plaintiff's termination, Lindel Scott-Foster, a female Assistant Prosecutor, was terminated.[3]

At the time of Plaintiff's termination, the Law Department employed fifteen male attorneys and sixteen female attorneys. Thirteen attorneys, including Plaintiff and Chief Prosecutor Mrozik, were over the age of forty at that time. Following Plaintiff's termination in 2006, one male attorney and four female attorneys were hired; one of the female attorneys was over forty at the time she was hired. In 2007, the Law Department hired eight male attorneys and nine female attorneys; at least two of the male attorneys and one female attorney were over forty.

On or about June 6, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). In his EEOC Charge, Plaintiff alleged that his termination amounted to discrimination based on his age and gender. In response, the City submitted a position statement contending that any and all decisions made with regard to Plaintiff were made appropriately, lawfully, and were not the result of any discriminatory conduct. In January 2008, the

---

[3] Plaintiff submitted the deposition transcript of Lindel Scott-Foster to the Court on November 16, 2010. Due to its lateness, Defendant objected to the Court's consideration of such testimony. Nevertheless, the Court has reviewed the deposition transcript and concludes that it does not offer any evidence that alters its opinion.

EEOC issued a Dismissal and Notice of Rights, which stated that it was "unable to conclude that the information obtained establishes violations of the statutes," but that it could not "certify that the respondent is in compliance with the statutes."

Plaintiff filed his complaint against the City on April 15, 2008. Discovery in this case ended on March 31, 2010.[4]

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotations omitted). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations. *Anderson*, 477 U.S. at 248. "[U]nsupported allegations" are

---

[4]Plaintiff did not conduct any discovery.

insufficient to defeat summary judgment. *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

## III.  DISCUSSION

### A.    The *McDonnell Douglas* Burden Shifting Analysis.

Disparate treatment claims brought under Title VII, the ADEA,[5] and the NJLAD should be analyzed under the three-step *McDonnell Douglas* burden-shifting analysis. *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973); *Victor v. New Jersey*, 203 N.J. 383, 408 (N.J. 2010). The first step of the *McDonnell Douglas* analysis requires that the plaintiff-employee bear the burden of establishing a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 801-04; *Johnson v. St. Luke's Hosp.*, 307 Fed. App'x 670, 671-72 (3d Cir. 2009) (citation omitted). To meet the burden at this step of the analysis, the plaintiff-employee must produce evidence sufficient to "convince a reasonable factfinder to find all of the elements of a prima facie case." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (D.N.J. 1997) (citation omitted).

Once a prima facie case has been established, the second step of the *McDonnell Douglas*

---

[5]Recently, the United States Supreme Court held that the burden of persuasion in ADEA claims does not shift from the plaintiff to defendant. *Gross v. FBN Fin. Srvs.*, 129 S. Ct. 2343, 2351 (2009). Nevertheless, the Court of Appeals for the Third Circuit has found no conflict in continuing to apply the *McDonnell Douglas* analysis to age discrimination cases, because the analysis does not shift the burden of persuasion to the defendant; it only shifts the burden of production. *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

analysis shifts the burden of production, but not the burden of persuasion, to the defendant-employer to articulate a "legitimate, non-discriminatory reason for the adverse employment action." *Stouch v. Twp. of Irvington*, 354 Fed. App'x 660, 666 (3d Cir. 2009) (citing *McDonnell Douglas*, 411 U.S. at 802-05); *see also Victor*, 203 N.J. at 408 n. 9. "The employer satisfies this burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). However, "[t]he employer need not prove that the tendered reason *actually* motivated its behavior." *Id.*

The third and final step of the *McDonnell Douglas* analysis shifts the burden of production back to the plaintiff-employee to establish that the defendant-employer's proffered reason is a pretext for discrimination. In *Fuentes*, the Third Circuit explained that a plaintiff may demonstrate pretext by directing the Court to evidence from which a reasonable factfinder could either (1) "disbelieve the employer's articulated legitimate reasons" or (2) "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* "A plaintiff will survive summary judgment if she can produce evidence sufficient 'to meaningfully throw into question' the employer's reason for the allegedly discriminatory action." *Reich*, 2009 U.S. Dist. LEXIS 90540, at *29 (quoting *Fuentes*, 32 F.3d at 765).

As to the first *Fuentes* prong, Third Circuit has explained as follows:

> To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is *whether discriminatory animus motivated the employer*, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could

10

rationally find them unworthy of credence.

*Keller*, 130 F.3d at 1108-09 (quoting *Fuentes*, 32 F.3d at 765)(emphasis added).  In other words, "'federal courts are not arbitral boards ruling on the strength of cause for discharge.  The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].'" *Id.* (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)).  To survive summary judgment utilizing the second *Fuentes* prong, the plaintiff-employee must identify evidence in the "record that 'allows the fact finder to infer that discrimination *was more likely than not* a motivating or determinative cause of the adverse employment action.'" *Id.* (quoting *Fuentes*, 32 F.3d at 762).

**B.     Application of the *McDonnell Douglas* Analysis to Plaintiff's Age Discrimination Claims Under the ADEA and the NJLAD.**

Age discrimination cases under the ADEA and the NJLAD are governed by identical standards and allocations of burdens of proof.  *Lawrence v. Nat'l Westminster Bank*, 98 F.3d 61, 65 (3d Cir. 1996); *Kelly v. Moser, Patterson and Sheridan, LLP*, 348 Fed. App'x 746, 2009 U.S. App. LEXIS 22352, *2 n.2 (3d Cir. Oct. 9, 2009).  To establish age discrimination under both the ADEA and the NJLAD, a plaintiff must demonstrate (1) he was a member of the protected class, (2) who was qualified for the position, (3) who suffered an adverse employment action, (4) and that such action took place under circumstances raising an inference of discriminatory action.  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003); *Connolly v. Mitsui O.S.K. Lines, Inc.*, No. 04-5127, 2009 U.S. Dist. LEXIS 86195, *12 (D.N.J. Sept. 21, 2009).

Defendant argues that Plaintiff cannot meet the fourth requirement of a prima facie case – demonstrating circumstances surrounding his termination, which give rise to an inference of age discrimination.  Defendant asserts that Courts have held that no inference of discrimination should

11

be drawn where the plaintiff was hired while a member of a protected class.  *See Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1267 n.24 (D.N.J. 1993); *E.E.O.C. v. MCI Intern., Inc.*, 829 F. Supp. 1438, 1461 (D.N.J. 1993).   Additionally, Defendant contends that no inference of age discrimination can be drawn against the City because twelve individuals over the age of forty worked for Defendant at the time of Plaintiff's termination.   Further, Defendant maintains that Plaintiff admitted there was no mention of his age during his termination.

In response, Plaintiff argues that the following circumstances surrounding his termination support an inference of discrimination: Plaintiff was hired by Corporation Counsel Watson, a member of a protected class, but terminated by Corporation Counsel Chandy, who was not old enough to be a member of the protected class; the articulated reason for Plaintiff's termination was a change in the City's direction;  Defendant replaced Plaintiff with Natasha Peavey, a black female approximately thirty-two years old; and Defendant hired Herbert Washington, a younger black male to replace Lindel Scott-Foster.

Considering each of Defendant's asserted circumstances, both individually and in the aggregate, Plaintiff simply has not sustained his burden of producing evidence to convince a reasonable factfinder that Plaintiff was terminated under circumstances raising an inference of age discrimination.  *Keller*, 130 F.3d at 1108.  The fact that Plaintiff was hired by Corporation Counsel Watson, who was a member of the protected class, but subsequently terminated by Corporation Counsel Chandy, who was not a member of the protected class, does not in itself *raise* an inference of discrimination.  Plaintiff cites *Wexler v. White's Furniture*, 317 F.3d 564, 573 (6th Cir. 2003)(en banc) (emphasis added), in which the Sixth Circuit rejected the notion that an inference of *non-discrimination must be applied* whenever the employee was hired and fired by the same individual.

However, *Wexler* does not stand for the proposition that a plaintiff hired by one individual, then fired by another individual, *raises* an inference of discrimination.  Further, Plaintiff undercuts his own argument by stating that "the relative ages of the terminating and terminated employee are relatively unimportant."  *Kadas v. MCI Systemshouse Corp.*, 255 F.3d 359, 361 (7th Cir. 2001).

Even when considered in light of the Defendant's statement that the City was changing direction, Plaintiff cannot meet his burden.  A reasonable factfinder could perhaps conclude that such a statement meant that the new mayoral administration was making employment changes to effectuate its political goals.  However, a reasonable factfinder could not conclude from that statement that Defendant was engaged in age discrimination.

Further, Plaintiff's Rule 56.1 Statement of Uncontested Facts makes no mention of either Natasha Peavey or Herbert Washington, and Plaintiff does not produce any documentation as to their employment history with the City.[6]  Conversely, Defendant produced a supplemental certification from Danielle Torok, First Assistant Corporation Counsel in the Department of Law, who certifies that Natasha Peavey was hired on October 3, 2005, about eleven months before Plaintiff's termination, and that Herbert Washington was hired April 28, 2003, about three and a half years prior to Plaintiff's termination.  Therefore, Plaintiff has failed to demonstrate circumstances surrounding his termination from which a reasonable fact finder could infer discrimination.[7]

---

[6]Plaintiff's opposition brief points this Court to Plaintiff's deposition, where Plaintiff indicated he did not know the name of the young woman who replaced him, the date on which she was hired, or what prior experience she had.  Additionally, Plaintiff did not allege Herbert Washington was hired to replace him; he merely indicated that Herbert Washington was hired into the Law Department "[i]n and around the time I was terminated."

[7]As a result of the Court's determination that Plaintiff cannot establish the fourth requirement of a prima facie case under both the ADEA and the NJLAD, this Court need not consider whether Plaintiff has established the second requirement of a prima facie case – whether

Assuming *arguendo* Plaintiff was able to establish a prima facie case of age discrimination under the ADEA and the NJLAD, Plaintiff nevertheless is unable to survive summary judgment because he can not sustain his burden at the third step of the *McDonnell Douglas* analysis. To meet his burden at the third stage of the analysis, Plaintiff must show that Defendant's proffered, legitimate, non-discriminatory reason – that Plaintiff was terminated for his performance deficiencies over his five years of employment – is a pretext for discrimination.

Plaintiff has not pointed to evidence in the record sufficient "to meaningfully throw into question the employer's reason for the allegedly discriminatory action." *Reich*, 2009 U.S. Dist. LEXIS 90540, at *29 (internal quotation marks and citation omitted). First, Plaintiff points the Court to the fact that Lindel Scott-Foster was terminated at the same time as him, both of them were over forty, and both were replaced by younger individuals – Natasha Peavey and Herbert Washington. As previously noted, Natasha Peavey and Herbert Washington were hired prior to Plaintiff's and Lindel Scott-Foster's termination. Additionally, the evidence does not bear out by a preponderance that Natasha Peavey and Herbert Washington were ever formally placed into the positions that Plaintiff and Lindel Scott-Foster previously held.

Second, Plaintiff argues that Defendant's legitimate, non-discriminatory reason for Plaintiff's termination is pretextual in that it is a "pro haec rationalization." In other words, Plaintiff takes issue with the fact that Defendant told Plaintiff at the time of his termination that he was being terminated due to a "change in direction," but now, in responding to Plaintiff's legal claims, asserts that its legitimate, non-discriminatory reason for terminating Plaintiff was Plaintiff's performance.

---

Plaintiff was performing in the position of Assistant Corporation Counsel at the time of his termination.

14

Plaintiff's argument is misplaced.  Courts have clearly stated that an employer's proffered reason need not have "*actually* motivated its behavior." *Fuentes*, 32 F.3d at 763.  Further, Defendant's proffered reason for Plaintiff's termination, when compared to Defendant's statement at the time of Plaintiff's termination, simply does not demonstrate a contradiction from which a reasonable factfinder could find Defendant's proffered reason unworthy of credence or could infer that Defendant's discriminatory animus was more likely than not a motivating cause of Plaintiff's termination.  *Id.*  The memorandums memorializing Plaintiff's performance, authored by three separate supervisors over four years, does not permit such a finding or inference.

Third, Plaintiff contends that "'the city was going in a different direction' with municipal prosecutors positions are buzz words for the ageist statement in the factual context of this case."  The Court is not persuaded that such a statement is an ageist remark.  Plaintiff does not put forth any facts, other than the fact that one other member of the protected class was terminated, to support such a conclusion by a reasonable factfinder.  Therefore, Plaintiff's age discrimination claims under the ADEA and the NJLAD are dismissed.

## C.    Application of the *McDonnell Douglas* Analysis to Plaintiff's Gender Discrimination Claims Under Title VII and the NJLAD.

When analyzing whether a plaintiff has made out a prima facie case for reverse gender discrimination under Title VII, the first step of the *McDonnell Douglas* analysis is modified. *Iadimarco v. Runyon*, 190 F.3d 151, 158 (3d Cir. 1999); *see also Mosca v. Cole*, 217 Fed. Appx. 158, 161 (3d Cir. 2007).  The modified analysis requires that the plaintiff establish a prima facie case of reverse gender discrimination by presenting "sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based on a trait that is protected under Title VII." *Iadimarco*, 190 F.3d at 161.  Step two and three of the *McDonnell Douglas* analysis

are not modified.  *See id.* at 165-66.

The first step of the *McDonnell Douglas* analysis for a reverse gender discrimination claim under the NJLAD retains the traditional requirement that plaintiff establish a prima facie case of discrimination; however, the first element of the four-part prima facie test is slightly modified for reverse discrimination.  To establish a prima facie case of reverse gender discrimination, a plaintiff must demonstrate that he or she (1) "has been victimized by an unusual employer who discriminates against the majority"; "(2) was performing his or her job; (3) suffered an adverse employment action; and (4) similarly situated persons outside his or her protected group were treated more favorably giving rise to an inference of discrimination."  *Aurelio v. Bd. of Educ. of Carteret*, No. 06-3146, 2009 U.S. Dist. LEXIS 52759, *8-9 (D.N.J. June 23, 2009) (internal quotations and citations omitted).  The elements of a prima facie case for reverse discrimination under the NJLAD do not appear to have been affected by *Iadimarco.  See id; see e.g.*, *Flizack v. Good News Home for Women, Inc.*, 346 N.J. Super. 150, 158 (N.J. App. Div. 2001); *Oakley v. Wianecki*, 345 N.J. Super. 194, 201 (N.J. App. Div. 2001).

Plaintiff relies on the same factual content and legal discussion asserted for his age discrimination claims as the basis for his gender discrimination claims and argues that "a jury can easily conclude that his sex was one of two reasons that he was terminated."  Plaintiff has not provided sufficient evidence from which a reasonable factfinder could conclude either that he was being treated less favorably because he was a male, *Iadimarco*, 190 F.3d at 161, or that Defendant is that unusual employer that discriminates against the majority, *Aurelio,* 2009 U.S. Dist. LEXIS 52759, *8-9.  To the contrary, as Plaintiff admitted, Lindel Scott-Foster, a woman, was terminated just a short time before him, and his gender was never mentioned during his termination.

16

Additionally, all three of Plaintiff's supervisors were male, one male attorney was hired subsequent to Plaintiff's termination in 2006, and eight male attorneys were hired by Defendant in 2007. Therefore, the Court concludes that Plaintiff has not sustained his burden under the first step of the *McDonnell Douglas* analysis to permit a claim of either gender discrimination under Title VII or the NJLAD to be submitted to the jury. Summary judgment is granted to Defendant on Plaintiff's gender discrimination claims.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted. This matter is dismissed with prejudice.


*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.


November 29, 2010